1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11   GLENN FITE, et al.,                    No. 2:21-CV-01633-DJC-AC

12                   Plaintiffs,

13        v.                                ORDER

14   SYSCO SACRAMENTO, INC., et al.,

15                   Defendants.

16

17        Plaintiffs bring this action against their former employer alleging Defendant's

18   policies caused them to forgo legally mandated meal and rest breaks without

19   compensation.  Plaintiffs allege various claims under the California Labor Code arising

20   from this unpaid off-the-clock work.  Defendant now seeks judgment on the

21   pleadings, arguing Plaintiffs' claims are preempted under section 301 of the Labor

22   Management Relations Act ("LMRA") because they challenge, invoke, and require

23   interpretation of a Collective Bargaining Agreement ("CBA") that governed the terms

24   of Plaintiffs' employment.  Defendant argues Plaintiffs' claims must be dismissed as

25   they have not yet exhausted the grievance procedures for these claims in the CBA.

26        As discussed further below, the Court finds that Plaintiffs' claims do not require

27   any interpretation of the CBA's terms and are thus not preempted by the LRMA.

28   Accordingly, the Court will deny judgment in Defendant's favor.

**BACKGROUND**

Plaintiffs Glenn Fite and David Garcia allege they were employed by Defendant Sysco Sacramento, Inc. from September 2017 to March 2018 and June 2015 to March 2022 respectively as "non-exempt, hourly workers entitled to all benefits of employment under California law, including meal and rest breaks and minimum wages." (Third Amended Complaint ("TAC") (ECF No. 78) ¶¶ 3, 17–18.) Plaintiffs were "responsible for filling orders by selecting product from within [Defendant's] warehouse, assembling and packing orders, and scanning those packaged orders for distribution to [Defendant's] customers." (*Id.* ¶ 3.)

During their employment, Plaintiffs allege they and other employees were subject to Defendant's "common, company-wide minimum productivity and accuracy standards" pursuant to which their "productivity was measured by the number of packages they processed/scanned, and the extent to which they made errors." (*Id.* ¶ 4.) Plaintiffs allege that they "worked under the threat of discipline for failing to meet those productivity and/or accuracy standards, and were thus pressured to work off-the-clock and/or during meal and rest periods." (*Id.* ¶ 5.) Plaintiffs allege that Defendant had actual or constructive knowledge of this unpaid work. (*Id.*)

Plaintiffs filed this class action on September 10, 2021, alleging six causes of action in their operative Third Amended Complaint for (1) unfair competition under California Business and Professions Code sections 17200, *et seq.*; (2) failure to pay minimum wages under California Labor Code sections 1194, 1194.2, and 1197, and Industrial Welfare Commission ("IWC") Wage Order 7-2001; (3) failure to provide rest periods under Labor Code section 226.7 and IWC Wage Order 7-2001; (4) failure to provide meal periods under Labor Code sections 226.7 and 512, and IWC Wage Order 7-2001; (5) failure to timely pay wages due at termination under Labor Code sections 201, 202, and 203; and (6) failure to issue itemized employee wage statements under Labor Code sections 226, 1174, and 1175. (*Id.* ¶¶ 39–86.) The Court subsequently dismissed Plaintiffs' sixth cause of action pursuant to a stipulation

1  by the Parties.  (ECF Nos. 88–89.)  Thus, Plaintiffs proceed on their claims for unfair

2  competition, failure to pay minimum wages, failure to provide meal and rest periods,

3  and waiting time penalties only.

4        Defendant brought the pending Motion for Judgment on the Pleadings on

5  February 14, 2025, seeking judgment as to each of Plaintiffs' claims on the basis that

6  they are preempted by section 301 of the LMRA, 29 U.S.C. § 185.  (Mot. J. Pleadings

7  (ECF No. 91) at 1–2.)  The Court held a hearing on April 3, 2025, with Daniel Keller

8  appearing for Plaintiffs, and James Holt appearing for Defendant.  The Court took the

9  matter under submission.

10                 **LEGAL STANDARD**

11        Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the

12  pleadings are closed—but early enough not to delay trial—a party may move for

13  judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion is evaluated

14  under the same legal standard as a Rule 12(b)(6) motion.  *Dworkin v. Hustler Mag.,*

15  *Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Thus, the allegations of the non-moving

16  party must be accepted as true, while any allegations made by the moving party that

17  have been denied or contradicted are assumed to be false.  *MacDonald v. Grace*

18  *Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006).  The facts are viewed in the light

19  most favorable to the non-moving party and all reasonable inferences are drawn in

20  favor of that party.  *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353,

21  360 (9th Cir. 2005).  "[J]udgment on the pleadings is properly granted when, taking all

22  the allegations in the non-moving party's pleadings as true, the moving party is

23  entitled to judgment as a matter of law."  *Marshall Naify Revocable Tr. v. United States*,

24  672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo v. Cnty. of Los Angeles*, 179 F.3d

25  698, 699 (9th Cir. 1999)).  Courts have discretion in appropriate cases to grant a Rule

26  12(c) motion with leave to amend, or to simply grant dismissal of the action instead of

27  entry of judgment.  *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D.

28  Cal. 2004).

1          **DISCUSSION**

2          Plaintiffs allege that Defendant's productivity and accuracy standards created a

3   work environment whereby Plaintiffs were forced to work off-the-clock and through

4   their meal and rest periods to avoid discipline.  Defendants argue that each of

5   Plaintiffs' claims arising from these allegations is preempted by section 301 of the

6   LMRA because Defendant is a party to a CBA with the International Brotherhood of

7   Teamsters Local No. 137 that governs the employment of all warehouse associates at

8   Defendant's distribution center where Plaintiffs were employed.  (Mot. J. Pleadings at

9   1.)  Defendant argues that the CBA explicitly addresses meal and rest periods, wages,

10  discipline, and grievance and arbitration procedures, and that Plaintiffs' claims require

11  the Court to interpret those CBA terms to resolve the claims, triggering preemption.

12  (*Id.* at 1–2.)  Defendant further argues that, because the claims are preempted by the

13  LMRA, Plaintiffs are required to exhaust the grievance procedures provided in the

14  CBA prior to bringing suit.  (*Id.* at 12.)  However, "[g]iven that Plaintiffs have not

15  alleged [] that they exhausted the contractual remedies provided by the CBA . . . the

16  claims preempted by Section 301 must be dismissed as a matter of law because

17  Plaintiff cannot establish the necessary elements of a viable Court action under

18  Section 301."  (*Id.* at 13.)  Thus, Defendant asks that the Court grant judgment on

19  Plaintiffs' claims in their entirety.

20         Section 301 of the LMRA provides that "[s]uits for violation of contracts between

21  an employer and a labor organization . . . may be brought in any district court of the

22  United States."  29 U.S.C. § 185(a).  "Although [section] 301 contains no express

23  language of preemption, the Supreme Court has long interpreted the LMRA as

24  authorizing federal courts to create a uniform body of federal common law to

25  adjudicate disputes that arise out of labor contracts."  *Curtis v. Irwin Indus.*, 913 F.3d

26  1146, 1151 (9th Cir. 2019).  "Thus, any suit 'alleging a violation of a provision of a labor

27  contract must be brought under [section] 301 and be resolved by reference to federal

28  law.'"  *Id.* at 1151–52 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)).

4

The preemptive effect of section 301 extends to all "state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016). "[I]f a state law claim 'is either grounded in the provisions of the labor contract or requires interpretation of it,' the dispute must be resolved through grievance and arbitration," as defined in the CBA governing the employment. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir. 2018) (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).

Despite the strong preemptive force of section 301, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by [it]." *Lueck*, 471 U.S. at 211. The Supreme Court has stressed that section 301 cannot be "read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). Thus, claims alleging violations of statutory rights to minimum wage, work hours, pay periods, and paid or unpaid leave "will not necessarily be preempted, even when a plaintiff is covered by a CBA" because those areas are "well within the traditional police power of the states." *Curtis*, 913 F.3d at 1152.

"The demarcation between preempted claims and those that survive [section] 301's reach is not . . . a line that lends itself to analytical precision." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc). However, the Ninth Circuit has identified a two-part test to determine whether a plaintiff's state law claims are preempted by the LMRA. *Curtis*, 913 F.3d at 1152. A defendant need only satisfy one of the elements for preemption under the LMRA to apply. *Burnside*, 491 F.3d at 1059.

First, the state law claims are preempted by the LMRA if the asserted cause of action involves a "right [that] exists solely as a result of the CBA . . . ." *Id.* The essential inquiry is whether the claim seeks "purely to vindicate a right or duty created by the CBA itself." *Curtis*, 913 F.3d at 1152 (citation omitted).

5

1    Second, LMRA preemption applies if a plaintiff's state law claim is "substantially

2    dependent on analysis of a collective-bargaining agreement." *Burnside*, 491 F.3d at

3    1059. Claims are substantially dependent on a CBA when litigating the state law claim

4    requires interpretation of the CBA. *Alaska Airlines*, 898 F.3d at 920. Construed

5    narrowly, "requiring interpretation" includes only claims "where there is an active

6    dispute over the 'meaning of the contract terms.'" *Id.* at 921 (quoting *Livadas*, 512 U.S.

7    at 124). "When the meaning of contract terms is not the subject of dispute, the bare

8    fact that a collective-bargaining agreement will be consulted in the course of state-law

9    litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at

10   124 (citation omitted). For example, "[a] collective-bargaining agreement may . . .

11   contain information such as rate of pay . . . that might be helpful in determining the

12   damages to which a worker prevailing in a state-law suit is entitled," but that would not

13   mean the claim is preempted. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399,

14   413 n.12 (1988). "Accordingly, a state law claim may avoid preemption if it does not

15   raise questions about the scope, meaning, or application of the CBA." *Curtis*, 913

16   F.3d at 1153.

17   As discussed further below, the Court finds that Defendant has failed to satisfy

18   either step of the *Burnside* test, as Defendant neither argues Plaintiffs' claims arise

19   from a right created solely by the CBA, nor persuasively demonstrates any of the

20   claims require interpretation of the CBA's terms. Accordingly, the Court will not enter

21   judgment on any of Plaintiffs' claims at this stage.

## I.    Meal and Rest Period Claims

23   Plaintiffs allege Defendant failed to provide rest and meal periods or

24   compensation in lieu thereof under Labor Code sections 226.7 and 512 and IWC

25   Wage Order 7-2001. (TAC ¶¶ 14, 53–70.) Specifically, Plaintiffs allege that Defendant

26   failed to provide Plaintiffs and other employees with rest periods of at least 10 minutes

27   per 4 hours worked and required Plaintiffs and other employees to work at least 5

28   hours without a 30-minute, uninterrupted meal period. (*Id.*) Defendant argues that

1    these claims are preempted by the LMRA because resolution of these claims requires

2    "substantial interpretation of Article 6, Section 2 of the CBA, which includes provisions

3    establishing the meal periods and rest breaks to which each represented job

4    classification is entitled and provisions establishing when such meal periods and rest

5    breaks are compensable." (Mot. J. Pleadings at 7; *see also* Req. Judicial Notice, Ex. A

6    ("2015 CBA") (ECF No. 92); Req. Judicial Notice, Ex. B ("2019 CBA") (ECF No. 92).[1]

7            The Court finds that these claims are not preempted. With respect to Plaintiffs'

8    meal break claim, the CBA provides that warehouse associates who work a shift in

9    excess of 6 hours shall be provided one 30-minute meal break, and associates who

10   work a shift in excess of 12 hours shall be provided a second 30-minute meal break.

11   (2015 CBA at 6; 2019 CBA at 7.) The CBA further provides that "[a]ll warehouse

12   associates agree to waive their unpaid meal period for any shifts between five hours

13   and no more than six hours" and "agree to waive their second unpaid meal period for

14   any shifts that are in excess of ten (10) hours and no more than twelve (12) hours." (*Id.*)

15   Defendant argues that this claim is preempted as resolution of the claim will require

16   substantial interpretation "to determine whether the Teamsters and [Defendant]

17   negotiated a California-compliant meal break waiver or whether Plaintiffs and the

18   putative class were entitled to the claimed meal breaks." (Mot. J. Pleadings at 7–8.)

19   _____

20   [1] Defendant asks the Court to take judicial notice of: (1) a CBA by and between Defendant and the
     International Brotherhood of Teamsters Local No. 137, effective November 21, 2015, through
21   November 23, 2019 ("2015 CBA"); and (2) a CBA by and between Defendant and the International
     Brotherhood of Teamsters Local No. 137, effective November 24, 2019, through November 22, 2025
22   ("2019 CBA"). (Req. Judicial Notice (ECF No. 92) at 2.) The Court will grant this request. If a court
     "goes beyond the pleadings to resolve an issue," a judgment on the pleadings is not appropriate and
23   "such a proceeding must properly be treated as a motion for summary judgment." *Hal Roach Studios,
     Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); Fed. R. Civ. P. 12(d). However, a
24   district court may "consider certain materials–documents attached to the complaint, documents
     incorporated by reference in the complaint, or matters of judicial notice–without converting the motion
25   . . . into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).
     Courts regularly take judicial notice of collective bargaining agreements when the documents are "not
26   subject to reasonable dispute." *See, e.g., Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180,
     1187 (E.D. Cal. 2016) (internal quotation marks omitted); *see also* Fed. R. Evid. 201(b). Here, Plaintiffs
27   do not challenge the authenticity of the CBAs or that these agreements governed their employment
     with Defendant. (*See generally* Opp'n Mot. J. Pleadings (ECF No. 93).) Thus, the Court takes judicial
28   notice of both the 2015 and 2019 CBAs.

The Court disagrees.  First, Plaintiffs base their meal break claim on California law, not the provisions of the CBA.  In particular, Labor Code section 512(a) provides:

> An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.  An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Lab. Code § 512(a).  As the Ninth Circuit explained in *Valles v. Ivy Hill Corp.*, 410 F.3d 1071 (9th Cir. 2005),

> The right to meal periods applies to signatories of collective bargaining agreements and constitutes a nonnegotiable right under California state law.  Because the employees have based their meal period claim "on the protection afforded them by California state law, without any reference to expectations or duties created by the[ir] collective bargaining agreement," . . . the claim is not subject to preemption.

*Id.* at 1082 (citation omitted).  That same logic applies here.  That the CBA also includes provisions that entitle employees to meal periods is of no import.  As the Supreme Court explained in *Lingle*, even if "dispute resolution pursuant to a [CBA], on one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for [section] 301 preemption purposes."  486 U.S. at 409–10.  The Parties do not argue that there is any dispute over the meaning or terms of the meal break schedule set forth in the CBA, apart from the meal break waiver for 6- and 12-hour shifts, and the schedule appears

clear on its face.  Thus, while the Court may need to reference the schedule in the CBA while resolving Plaintiffs' claims, it is not clear that the Court will need to interpret any aspect of the schedule to do so.

Second, while the Parties dispute whether the CBA contains a valid meal break waiver for 6- and 12-hour shifts, resolution of that dispute turns on analysis of California law, not on any interpretation of the CBA provisions.  Such waiver is permitted under section 512(a).  *See* Lab. Code § 512(a) ("[I]f the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee."); *id*. ("[I]f the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."). Plaintiffs contend there was no valid meal break waiver here because "there is no statutory exemption allowing for waiver of such rights through collective bargaining." (Opp'n Mot. J. Pleadings (ECF No. 93) at 2; *see also* TAC ¶ 67 ("[T] there was no mutual waiver of meal periods and employees worked for periods of more than five hours without an off-duty meal period of at least 30 minutes.").)  Defendant argues Plaintiffs' position is incorrect because "[i]t is well settled that a union may lawfully waive statutory rights of represented employees in a collective bargaining agreement."  *Ehret v. WinCo Foods, LLC*, 26 Cal. App. 5th 1, 5 (2018) (quoting *Am. Freight Sys., Inc. v. Nat'l Labor Rels. Bd.*, 722 F.2d 828, 832 (D.C. Cir. 1983)) (holding that a CBA lawfully waived the employees' statutory right under section 512(a) to a meal period when working more than five hours but not more than six hours on grounds that the waiver was clear and unmistakable, as required by federal law). Thus, the Parties do not dispute the language of the CBA waiver provision, only that a union may lawfully waive meal breaks.  However, under the second prong of the *Burnside* test, "claims are only preempted to the extent there is an active dispute over the meaning of contract terms."  *Curtis*, 913 F.3d at 1153 (internal quotation marks

1    and citation omitted).  Defendant has failed to demonstrate there is an active dispute

2    over the terms of the CBA sufficient to meet the *Burnside* standard.

3         Similarly, with respect to Plaintiffs' rest break claim, the CBA provides for 15-

4    minute rest periods based on whether the employee had a "5–8 Hour Schedule" or a

5    "4–10 Hour Schedule."  (2015 CBA at 6; 2019 CBA at 7.)  For example, an employee

6    on the 5–8 Hour Schedule would be entitled to one 15-minute break after 3.5 hours

7    worked, two 15-minute breaks after 6 hours work, and three 15-minute breaks after

8    9.75 hours worked, etc., while an employee on the 4–10 Hour Schedule would be

9    entitled to one 15-minute break after 3.5 hours worked, two 15-minute breaks after 6

10   hours work, and three 15-minute breaks after 10 hours worked, etc.  (*Id.*)  Defendant

11   argues that Plaintiffs' claim is premised on an entitlement to different rest breaks than

12   those negotiated in the CBA, resolution of which "necessarily requires interpretation

13   of the agreement" as the Court will need to analyze "whether the CBA's rest break

14   provisions were followed, whether they comply with California law, and whether any

15   deviations from those provisions were contractually permissible," questions which

16   "trigger preemption under Section 301 of the LMRA."  (Mot. J. Pleadings at 8.)

17        The Court is unpersuaded.  First, as with Plaintiffs' meal break claim, Plaintiffs'

18   claimed entitlement to rest periods of at least 10 minutes per 4 hours worked derives

19   from nonnegotiable rights provided under California law, not the CBA.  *See* IWC

20   Wage Order 7-2001 § 12(A) ("Every employer shall authorize and permit all

21   employees to take rest periods, which . . . shall be based on the total hours worked

22   daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction

23   thereof."); *see also Zavala v. Scott Bros. Dairy*, 143 Cal. App. 4th 585, 594 (2006) (rest

24   breaks are a non-waivable state-mandated "minimum labor standard").

25        Second, Defendant does not suggest that there is any dispute regarding the

26   rest break schedule set forth in the CBA.  At most, Defendant argues that because the

27   CBA guarantees employees more rest periods than provided for under California law,

28   the Court will have to refer to the CBA's rest break schedule in resolving Plaintiffs'

1    claims.  This falls short of the requisite showing to find interpretation is necessary to

2    resolve the claims; "a court's need to 'review' or 'analyze' a CBA is not the same as

3    'interpreting' its text, as interpretation implies discordance over the meaning of a term

4    that requires authoritative explication." *Cuellar-Ramirez v. US Foods, Inc.*, No. 16-cv-

5    00085-RS, 2016 WL 1238603, at *5 (N.D. Cal. Mar. 22, 2016).  Defendant does not

6    point to any specific terms that are undefined, disputed, ambiguous, or otherwise

7    require some interpretation.  *Cf., e.g., Marquez v. Toll Glob. Forwarding*, 804 F. App'x

8    679, 681 (9th Cir. 2020) (plaintiff's rest break claims were preempted under step two

9    of the *Burnside* test because the parties disputed the meaning of the terms "permit,"

10   "load," "unattended," and "leave a load" in a CBA, and "[d]etermining the meaning of

11   industry terms is a form of interpretation").  That Defendant may be required under

12   the CBA to provide more or longer rest breaks than required by California law does

13   not impact the Court's consideration of whether Defendant has provided Plaintiffs with

14   the legally mandated minimum.  In short, Defendant has failed to show anything more

15   than a "hypothetical connection between the claim and the terms of the CBA."

16   *Cramer*, 255 F.3d at 691.

17        At the hearing, Defendant also argued that, because Plaintiffs allege they were

18   forced to miss meal and rest breaks due to Defendant's onerous productivity and

19   accuracy standards, resolution of those claims will necessarily turn on interpretation of

20   Article 4 of the CBA, which sets forth Defendant's management rights, including their

21   right to set performance standards for employees.  The Court disagrees.  First,

22   Plaintiffs do not dispute that Defendant was legally permitted to set performance

23   standards for its employees under the CBA.  Rather, they allege those standards

24   caused them and other employees to miss their meal and rest breaks.  Defendant

25   does not argue that Article 4 of the CBA excused Defendant's compliance with the

26   meal and rest break provisions of California law.  Second, while Article 4 states that

27   Defendant may set performance standards for its employees, it does not detail what

28   those standards are.  The Parties will presumably need to reference documents and

1    testimony other than the CBA to establish what, exactly, Defendant's objectionable

2    standards were.  Therefore, it appears unlikely the Court will need to reference, let

3    alone interpret, Article 4 in adjudicating Plaintiffs' claims.

4         Finally, Defendant argues Plaintiffs' meal and rest break claims are subject to

5    preemption because the CBA contains a grievance procedure for disputes concerning

6    the CBA's provisions.  (Mot. J. Pleadings at 8–9.)  However, as held above, Plaintiffs'

7    claims arise under California law, not the CBA.  Further, in order for a grievance or

8    arbitration provision to implicate preemption, the "union-negotiated waiver of

9    employees' statutory right to a judicial forum" must be "clear and unmistakable" and

10   directly reference the relevant statutes at issue.  *Munoz v. Atl. Express of L.A., Inc.*, No.

11   CV 12–6074–GHK (FMOx), 2012 WL 5349408, at *4 (C.D. Cal. Oct. 30, 2012).  Here,

12   the CBA grievance provision clearly states that "[t]his provision shall not constitute a

13   waiver of any Associate's right, under federal or state law, to pursue . . . statutory

14   claims for violation of federal or state wage and hour law through the judicial system

15   or other available means."  (2015 CBA at 13; 2019 CBA at 14.)  Thus, there has been

16   no waiver of Plaintiffs' right to litigate their claims.

17        Plaintiffs' meal and rest break claims are not preempted by the LMRA.

18   **II.    Minimum Wage Claim**

19        Plaintiffs also allege that Defendant failed to pay them their minimum wages for

20   all hours worked, as Defendant's productivity and accuracy standards caused Plaintiffs

21   "to work 'off the clock' time, including during meal periods, without compensation."

22   (TAC ¶¶ 43–52.)  Defendant argues that this claim is preempted by the LMRA as it is

23   predicated on Plaintiffs' claims they were not provided meal and rest breaks which are

24   preempted.  (Mot. J. Pleadings at 9.)  Defendant also argues that the CBA establishes

25   the wage rates for warehouse associates, setting base hourly wage rates above the

26   state mandated minimum wage, which "reinforces the need to reference the

27   agreement because any challenge to the adequacy of wages necessarily requires

28   interpretation of the CBA, reinforcing LMRA preemption."  (*Id.* at 10.)

1    As held above, Plaintiffs' meal and rest break claims are not preempted by the

2    LRMA.  *See* Section I *supra*.  Thus, to the extent Defendant contends the minimum

3    wage claim is preempted based on those claims, Defendant's argument falls flat.

4    Further, Defendant has failed to demonstrate there is any dispute over the

5    minimum wage scale set forth in the CBA sufficient to preempt that claim.  While the

6    Court may need to reference the wages established by the CBA while resolving

7    Plaintiffs' claims, Defendant has not shown the Court will need to interpret those wage

8    terms when determining whether Plaintiffs were paid a minimum wage under

9    California law.  *See Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108

10   (9th Cir. 2000) (a right is "substantially dependent" on analyzing a CBA when the court

11   must "interpret" terms of a CBA to resolve the dispute; merely "referring" or "looking"

12   to the CBA is insufficient to trigger preemption under step two of the *Burnside* test).

13   To the extent the CBA may eventually need to be interpreted for Plaintiffs' damages

14   computation, that is no reason to hold that Plaintiffs' claim is preempted now.  As

15   explained in *Burnside*, if "some dispute we cannot now foresee will arise in the course

16   of computing damages that will require the interpretation of the CBAs," then "the

17   district court will be able to devise processes to preserve the preeminent role of the

18   CBAs' dispute resolution processes to address the discrete dispute then arising."  491

19   F.3d at 1074 n.19.

20   Thus, Plaintiffs' minimum wage claim is not preempted under the LMRA.

21   **III.    Failure to Timely Pay Wages Upon Termination and Unfair Competition**

22   **Claims**

23   Finally, Defendant argues that Plaintiffs' claims for failure to timely pay wages

24   upon termination and unfair competition are preempted by the LMRA as they are

25   predicated on Plaintiffs' meal period, rest period, and minimum wage claims.  (Mot. J.

26   Pleadings at 11–12.)  As held above, Plaintiffs' underlying claims are not preempted.

27   *See* Sections I-II *supra*.  Therefore, the waiting time and unfair competition claims are

28   also not preempted.

**CONCLUSION**

For the reasons set forth above, the Court hereby DENIES Defendant Sysco Sacramento, Inc.'s Motion for Judgment on the Pleadings (ECF No. 91).

IT IS SO ORDERED.

Dated:  __April 23, 2025__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – Fite21cv1633.MotJudgmentPleadings

14